IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br>RAMON AGUIRRE, et al.,<br><br>  Debtors,<br><br>_____<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>  Appellant,<br><br>v.<br><br>WHEELER FINANCIAL, INC.,<br><br>  Appellee. | Civil Action Nos. 16 CV 4924, 16 CV 4927<br>and 16 CV 5271<br><br>Bankr. Case No. 14-24420<br><br>Hon. Charles R. Norgle |

**OPINION AND ORDER**

This case is a three-party tangle, a shemozzle, between husband and wife debtors who operate an Italian restaurant out of a commercial building that they own in Chicago, the bank that loaned the debtors in excess of $1 million dollars collateralized by the commercial property, and a tax purchaser who obtained a tax lien on the property. Debtors Ramon and Bertha Aguirre ("the Debtors") failed to pay their 2010 property taxes on the commercial property they owned. Prior to that, JPMorgan Chase Bank, N.A. ("Chase") loaned the Debtors approximately $1.3 million dollars and held a perfected first priority security interest in the commercial property. In 2012, Wheeler Financial, Inc. ("Wheeler") acquired a tax lien on the property. Before the redemption period on the tax lien expired, the Debtors filed a Chapter 11 bankruptcy petition and confirmed a reorganization plan. The Debtors then failed to pay the amount due to Wheeler under the plan by the designated date. After the Debtors missed the payment deadline, Wheeler moved to lift the automatic stay, and the Debtors moved to modify the plan. The bankruptcy

court granted Wheeler relief from the automatic stay and denied the Debtors' modification of the plan. The Debtors and Chase now appeal the bankruptcy court's decision. For the following reasons, the bankruptcy court's decision is vacated, and this case is remanded for further proceedings consistent with this Opinion.

## I. BACKGROUND

The Debtors own three real estate properties and operate an Italian restaurant out of one of them: the first a single family residence at 4599 Hatch Lane in Lisle, Illinois—their home ("home"); the second a three-story commercial property located at 1374 Grand Avenue in Chicago, Illinois—the Debtors' restaurant ("restaurant property"); and the third another single family residence—a rental unit located at 1307 Burlington Avenue in Lisle, Illinois that generates about $1,100 in gross income per month ("rental unit"). In October 2009, Chase loaned Debtors in excess of $1.3 million dollars. The loan was collateralized by the Debtors' home and restaurant property. The rental unit is unencumbered.

For reasons not explained in the record, the Debtors did not pay the 2010 real estate taxes on the restaurant property. On August 8, 2012, Wheeler obtained a Certificate of Purchase at the Clerk of Cook County's annual tax sale for $10,839.98, and it amounts to a tax lien on the Debtors' restaurant property. The Debtors' delinquency on their real estate taxes continued and Wheeler paid $23,945.41 to fulfill the Debtors' tax obligation for the years 2011, 2012, and a portion of 2013. The most recent payment by Wheeler was on April 2, 2014. There is no evidence in the record showing that the Debtors received actual notice from Wheeler that Wheeler had purchased and maintained the tax lien on their restaurant property.

On June 30, 2014, the Debtors voluntarily filed for bankruptcy under Chapter 11 for the purpose of reorganizing their debts. In the schedules filed on July 1, 2014, the Debtors did not

list Wheeler as a secured or unsecured creditor. Nor did the Debtors list the Clerk of Cook County as a creditor for the real estate taxes on the restaurant property. Nonetheless, the Debtors proceeded before the bankruptcy court and began formulating their Chapter 11 reorganization plan.

Meanwhile, on December 8, 2014, Wheeler voluntarily filed an extension of the redemption period with the Clerk of Cook County, which provided the Debtors until June 8, 2015 to pay the overdue taxes, penalties and interest. Wheeler filed a petition for a tax deed in the Circuit Court of Cook County on December 10, 2014. The Debtors received notice of the state court proceeding in January 2015, but did not enter an appearance in the case. It appears that the first time the Debtors became aware of Wheeler's existence was when the Debtors received summons for the state court litigation. Wheeler never served Chase, the million dollar lender, a summons as an interested party in the state court proceeding.

On February 2, 2015, the Debtors filed a Second Amended Plan of Reorganization (the "Plan"). That Plan lists three classes of creditors: Class One includes only Chase, Class Two includes only Wheeler, and Class Three includes all of the unsecured creditors. In short, Class One allows the Debtors to retain ownership of their home and their restaurant property so long as they pay Chase $8,000 per month for up to thirty-six months. The Plan contemplates a lump sum payment in excess of $1 million to Chase on or before the end of the thirty-six months, and $4,000 per month thereafter until the balance owed to Chase is paid in full. The Plan is explicit that Chase retains its pre-petition liens until paid in full. The entirety of Wheeler's Class Two claim in the Plan reads as follows:

> Debtors owe over $40,000 to Wheeler-Dealer, Ltd., d/b/a Wheeler Financial, Inc., as a real estate tax purchaser, Cook County Clerk and/or DuPage County Treasurer/DuPage County Clerk, for past due real estate taxes, interest and penalties. The real estate commonly known as 1307 Burlington, Lisle, Illinois, has

3

been placed for sale with a Real Estate Agent and shall remain for sale until sold. Upon sale of the property, the net proceeds of from the sale (defined as payment of broker's commission, real estate tax, prorations, usual and customary title charges, usual and customary closing costs, and a reasonable attorneys' fee, not to exceed $3,000) will be used to pay the pre-petition real estate taxes currently owing for 4500 Hatch Lane, Lisle, Illinois 60532 and 1374 West Grand Avenue, Chicago, Illinois, including but not limited to all amounts now owed to Wheeler-Dealer, Ltd., d/b/a Wheeler Financial, Inc./Cook County Clerk and the DuPage County Treasurer (both Cook and DuPage County) for these two parcels through 2013. Additionally, the balance of the net proceeds up to $50,000 shall be paid to JPMorgan as additional consideration to agree to this Plan of Reorganization. This paragraph applies to the prepetition real estate taxes on the real estate commonly known as 4599 Hatch Lane, Lisle, Illinois and 1374 West Grand Avenue, Chicago, Illinois only. This claim is impaired.

Second Amended Plan of Reorganization at 10 (hereinafter cited as "The Plan"), App. 1 to Brief of Appellant JPMorgan Chase at 11, Dkt. No. 28-1 at 11. The terms of Class Three promise to pay the unsecured creditors 100 percent of the amount due, which totals $17,385.79. The Plan explicitly states that "the Confirmed Plan shall become a binding agreement between the Debtors and his creditors, superseding all pre-petition obligations of the Debtors to his Creditors." The Plan at 11. The bankruptcy court confirmed the Plan on April 15, 2015.

Wheeler claims that it did not receive actual notice of the Debtors' bankruptcy filing until March 1, 2015, when it received a Certificate of Service of Class 2 Ballots. Because of its late notice of the bankruptcy filing, Wheeler never filed a proof of claim. However, Wheeler participated in the formation of the Plan by negotiating an additional provision for its Class Two claim into the Plan. The additional provision states that:

Debtors are to sell the property and/or payoff the entire balance owed to Wheeler-Dealer, Ltd. within six months of confirmation. [A]ll other terms as to Class 2 shall remain the same.

Order Amending the Plan at 1, App. 2 to Brief of Appellant JPMorgan Chase at 11, Dkt. No. 28-1 at 17. The additional provision was also confirmed by the bankruptcy court on April 15, 2015.

4

Six months came and went after the bankruptcy court's confirmation of the Plan without the Debtors making a single payment to Wheeler. On November 19, 2015, Wheeler filed a motion for relief from stay so that it could once again proceed on its petition for a tax deed still pending in state court. On December 7, 2015, the Debtors filed a motion to modify the Plan to extend the payment date to Wheeler another six months, but it also provided a guaranty that if the Debtors could not pay the debt owed to Wheeler, Chase would. Whatever amount paid by Chase to Wheeler would correspondingly increase the amount that the Debtors owed to Chase under the Plan. The bankruptcy court ordered briefing on both motions and conducted a hearing on January 20, 2016.

At the hearing, counsel for the Debtors and Chase appeared with three cashier's checks that had a combined total of $50,000, payable immediately to Wheeler. Despite the available funds, the bankruptcy court heard legal arguments from the parties and decided to issue a written decision on the motions. About three months later, on April 18, 2016, the bankruptcy court granted Wheeler's motion to lift the stay and denied the Debtors' motion to modify the Plan.

On June 27, 2016, this Court granted Chase's motion to stay the bankruptcy court's April 18th Order that granted Wheeler relief from the automatic stay. By that time, Wheeler had already applied for issuance of a tax deed in state court, received a tax deed on the restaurant property, and recorded the tax deed. Neither the Debtors nor Chase were present or contested the issuance of the tax deed at the state court hearings. The Court ordered Wheeler to "take no further action with the tax deed." Order at 4 (June 27, 2016).

## II. DISCUSSION

Chase argues that the bankruptcy court abused its discretion when it lifted the stay and allowed Wheeler to pursue a tax deed in state court because the bankruptcy court erroneously

applied the three-step analysis adopted by the Seventh Circuit in Matter of Fernstrom Storage and Van Co., 938 F.2d 731, 735 (7th Cir. 1991). Additionally, Chase argues that the bankruptcy court abused its discretion when it denied the Debtors' motion to modify the confirmed plan. The Debtors have adopted Chase's arguments in full. Wheeler defends the bankruptcy court's April 18, 2016 Memorandum Decision as an appropriate exercise of discretion given the circumstances of the case.

### A. Standard of Decision

The bankruptcy code entrusts the bankruptcy court with discretion to grant a creditor relief from the automatic stay or modify a debtor's confirmed plan. See 11 U.S.C. § 362(d)(1) (requiring the court to grant relief from the automatic after making a "for cause" finding); see also 11 U.S.C. § 1127(b) (requiring the court to find that "circumstances warrant" modification of the plan). Because the statutes impart discretion to the bankruptcy court, its decision can only be reversed for an abuse of discretion. Matter of Holtkamp, 669 F.2d 505, 507 (7th Cir. 1982). An abuse of discretion occurs when "1) the decision was based on an erroneous conclusion of law, 2) the record contains no evidence on which the bankruptcy court could have based its decision, or 3) the factual findings are clearly erroneous." Matter of Straviotis, 977 F.2d 1202, 1204 (7th Cir. 1992).

### B. Whether the Bankruptcy Court Abused its Discretion When it Lifted the Automatic Stay and Permitted Wheeler to Pursue a Tax Deed on the Debtors' Restaurant Property

#### 1. The Relevant Case Law in the Seventh Circuit

There are three Seventh Circuit cases that guide the Court's analysis in this case; In re Lamont, 740 F.3d 397 (7th Cir. 2014), Matter of Penrod, 50 F.3d 459 (7th Cir. 1995), and Matter

of Fernstrom Storage and Van Co., 938 F.2d 731 (7th Cir. 1991).[1] LaMont is helpful because it explains what type of claim a tax purchaser has and how it can be treated in bankruptcy. LaMont was a Chapter 13 case in which a tax purchaser attempted to obtain a tax deed after the debtors entered bankruptcy, confirmed a plan, and satisfied the obligations of the plan. 740 F.3d at 401-02. Under Illinois law, Certificates of Purchase are "mere species of personal property…until the certificates have been redeemed and the petition for a tax deed has been granted." Id. at 405. Because the debtors filed bankruptcy before the redemption period expired, the tax purchaser's secured claim was properly accounted for, and modified by, the debtor's plan. Id. at 409. Notably, the LaMont court rejected the tax purchaser's contention that the full redemption amount must be paid in full and explained that the "plan may modify a secured claim and pay it over the course of the plan." Id. Ultimately, the LaMont court affirmed the lower courts' decisions to deny the tax purchaser's request to modify the automatic stay. Id. at 411.

Penrod is helpful because it explains what happens when a secured creditor does not expressly preserve its lien in a confirmed plan. Penrod was a Chapter 11 case in which the debtors promised in a confirmed plan to pay a secured creditor the entire debt owed over seven years at eleven percent interest. 50 F.3d at 461. However, the plan said nothing about preserving a lien on the debtors' asset after confirmation of the plan. Id. Because of unforeseen circumstances, the debtors were unable to complete the payments required by the plan and defaulted shortly after the plan went into effect. Id. The bankruptcy court found in favor of the debtors because the creditor's lien was extinguished upon the confirmation of the plan. Id. While interpreting 11 U.S.C. § 1141(c), the Penrod court reasoned that "secured creditors commonly give up their preexisting liens for other interests in the reorganized firm." Id. at 463. Because the

---

[1] The Court rejects Chase and the Debtors' joint position that In re Smith, 811 F.3d 228 (7th Cir. 2016) applies to the facts of this case. The Debtors have not yet moved to set aside a fraudulent transfer pursuant to 11 U.S.C. § 548, as the debtors had in Smith.

7

secured creditor participated in the reorganization plan but did not expressly preserve its prepetition lien in the plan, the creditor's lien was extinguished upon the confirmation of the plan. Id. Therefore, the Penrod court affirmed the bankruptcy court. Id. at 464.

Finally, Fernstrom is helpful because it adopted the three judicial factors that the court must consider when granting a creditor relief from the automatic stay. In Fernstrom, a creditor sought to pursue a civil case against the debtor's insurance provider after the debtor had filed for Chapter 11 bankruptcy. 938 F.2d at 733. The Fernstrom court underscored that the "automatic stay provision of the Bankruptcy Code, § 362(a), has been described as one of the most fundamental debtor protections provided by the bankruptcy laws." Id. at 735. Before determining that "cause" exists to lift the automatic stay, the bankruptcy court must decide whether:

> a) Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit,
> b) the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor, and
> c) the creditor has a probability of prevailing on the merits

Id. (alteration in original). When discussing the first prong of the three-part test—prejudice to the estate or the debtor—the Seventh Circuit recognized that it was not "faced with a situation in which further prosecution of [the creditor's] suit will impair [the debtor's] ability to formulate a plan of reorganization or otherwise do [the debtor] 'irreperable harm.'" Id. at 736. With regard to the second prong—hardship to the creditor by continuing the stay—the Seventh Circuit discussed how, given the costs of litigation, implementing a stay in a non-bankruptcy litigation after it has reached an advanced stage is a "great prejudice" to a creditor; whereas, maintaining the stay when a non-bankruptcy litigation is in an infancy stage is less prejudicial. Id. at 736-37. In balancing these three factors, the Fernstrom court found that the bankruptcy court did not

8

abuse its discretion when it decided to lift the stay. Id. at 737. With the legal background of these three cases in consideration, the Court turns to the facts of this case.

**2. The Facts of the Case as Applied to the Relevant Case Law and the Bankruptcy Code**

When Wheeler received a Certificate of Purchase on August 8, 2012, it became a creditor of the Debtors, secured by a tax lien on the restaurant property. See LaMont, 740 F.3d at 405. When the Debtors filed their Chapter 11 bankruptcy petition on June 30, 2014, Wheeler's Certificate of Purchase entitled it to a claim against the Debtors' estate. See id. at 409; see also 11 U.S.C. § 101(5). The redemption period on the restaurant property had not yet expired before the Debtors filed for bankruptcy; therefore, the Debtors still owned the building, the building was part of their estate, and Wheeler's claim could still be modified by the Plan. See LaMont, 740 F.3d at 409. When the bankruptcy court confirmed the Debtors' Plan on April 15, 2014, the Plan modified Wheeler's claim. See Penrod, 50 F.3d at 463. The Court finds that Wheeler participated in the formation of the Plan and is bound by the terms of the Plan because it had actual knowledge of the Debtors' bankruptcy filing 45 days before the Plan was confirmed, and Wheeler was able to negotiate a payment deadline favorable to it before the Plan was confirmed. See id. at 463-64; see also 11 U.S.C. § 1141(a).

After confirmation of the Plan, Wheeler's pre-petition tax lien secured on the restaurant property was replaced with a new right—a contractual right defined by the terms of the Plan. See 11 U.S.C. § 1141(d)(1). Wheeler was informed of the modification of its claim because Article IV of the Plan stated that "the Confirmed Plan shall become a binding agreement between the Debtors and his creditors, superseding all pre-petition obligations of the Debtors to his [sic] Creditors." The Plan at 12. The provisions in the Plan were silent regarding whether Wheeler maintained a secured claim on the restaurant property. Wheeler never negotiated a clause

9

preserving its pre-petition lien; instead, Wheeler opted for a payment deadline. Therefore, Wheeler gave up its pre-petition lien for another interest in the Debtors' reorganized estate when the Plan was confirmed. See Penrod, 50 F.3d at 463; see also In re Airadigm Communications, Inc., 519 F.3d 640, 649 (7th Cir. 2008) ("Penrod recognizes the practical reality that if it appears that a creditor has received some sort of payment or otherwise had its interest in property affected during the reorganization, the parties did not also agree to allow the creditor to keep its lien after the reorganization unless the plan specifically says so."); see also 11 U.S.C. § 1141(c).

Wheeler's release of its secured claim is highlighted by a comparison to the Plan provisions regarding Chase's claim. The Class One terms explicitly stated that Chase would not "release, [sic] its liens, mortgages and security interest" until it was "paid in accordance with subparagraph (d)." The Plan at 7. The Plan reiterated that Chase's "Secured Claim shall remain perfected and in full force and effect to the same nature and extend [sic] as its pre-petition security interest, except as provided herein." Id. at 8. Chase also retained the right to foreclose on the Debtors' home and restaurant property in the event that the Debtors were not able to timely cure a default. Wheeler's post-confirmation claim, on the other hand, did not expressly retain a lien the restaurant property or a right to foreclose on the restaurant property. Instead, Wheeler exchanged its pre-petition rights for a right to a payment in excess of $40,000[2] by October 15, 2015. The Plan did not provide a general remedy in case the Debtors defaulted, and the Plan did not provide a specific remedy for Wheeler if the Debtors defaulted. A plain reading of the Plan shows that, post-confirmation, Wheeler no longer had a lien on the Debtors' restaurant property.

However, Wheeler is not without recourse or remedy for the Debtors' default. The release of any claim in the Plan is conditioned upon the Debtors' payment as described in the Plan. See

---

[2] According to a February 9, 2015 Estimate of Cost of Redemption prepared by the Clerk of Cook County, the Debtors owed $43,058.06 as of that date. However, that total is subject to increase over time to account for taxes, penalties and costs that continue to accrue.

10

the Plan at 11 (creditors waive rights "[s]o long as Debtors act in accordance with the Plan terms") and (claims and liens are released "upon the completion of the payments required under the Plan"). So when the Debtors defaulted by missing the payment deadline as prescribed by the Plan, Wheeler was entitled to a payment of roughly $40,000. Essentially, Wheeler had a breach of contract claim against the Debtors, not a right to a tax deed on the Debtors' restaurant property. Therefore, it was an abuse of discretion for the bankruptcy court to lift the stay and permit Wheeler to pursue legal action in the state court.

### 3. The Bankruptcy Court's Decision

Without reference to statute or Seventh Circuit case law, the bankruptcy court stated early on in its analysis that "[t]he law is clear that a postconfirmation default is cause to lift the automatic stay." Memorandum Decision at 7 (hereinafter cited as "Memorandum Decision"), App. 16 to Brief of Appellant JPMorgan Chase at 8, Dkt. No. 28-1 at 430. As discussed above, Fernstrom is the controlling case law in this circuit for determining whether to lift an automatic stay for cause, and Fernstrom requires the Court to consider three factors before granting relief from the stay. It was an erroneous conclusion of law for the bankruptcy court to conclude that the Debtors' default alone was justification to lift the stay. Postconfirmation default is not explicitly mentioned in § 362(d)[3] and it is not a factor listed in Fernstrom. The bankruptcy court eventually discussed Fernstrom in its decision, but it glossed over the Seventh Circuit's admonition that "[c]ause as used in § 362(d) has no clear definition and is determined on a case by case basis." 938 F.3d at 735.

---

[3] Under 11 U.S.C. § 1112, a "material default by the debtor with respect to a confirmed plan" is a reason to convert or dismiss a chapter 11 bankruptcy filing. However, § 362(d) does not list default as a reason to lift an automatic stay. Section 362(d)(1) states that modification of an automatic stay "for cause" can occur in cases where there is a "lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). On January 20, 2016, the Debtors and Chase offered to pay Wheeler $50,000, an amount in excess of its claim. Additionally, given the surety provided by Chase in this case, it is not a situation where Wheeler's financial interest lacks adequate protection.

11

When considering the first two Fernstrom factors, the bankruptcy court recognized the great harm to the Debtor and the bankrupt estate—loss of the Debtors' primary source of income and the loss of the valuable commercial property—if it lifted the automatic stay, but regardless, thought that a delayed payment to Wheeler was far more prejudicial. This was an abuse of discretion. "Illinois law is clear that a tax purchaser has no right to issuance of a deed, and so is not harmed if the redemption payment is made." In re Bates, 270 B.R. 455, 464-65 (N.D. Ill. 2001) (citing Monreal v. Sciortino, 338 Ill. App.3d 475, 479 (Ill. App. Ct. 1992)). On January 20, 2015, in the presence of the bankruptcy judge, the Debtors and Chase offered to pay Wheeler $50,000 in the form of cashier's checks. On appeal, Chase continues to offer to pay Wheeler the full redemption amount within seven days of Wheeler providing "sufficient information and documentation to Chase (i.e., exact amount owed, Wheeler's FEIN, etc.) to enable it to process the payment of Wheeler's claim." Brief of Appellant JPMorgan Chase Bank, N.A at 33. According to Illinois law, these continued efforts to redeem Wheeler's claim alleviate the harm to Wheeler. Conversely, the Debtors and the bankrupt estate will suffer a great prejudice if Wheeler is allowed to retain the tax deed on the restaurant property. Furthermore, under Penrod and 11 U.S.C. § 1141(d)(1), the Plan now controls, and Wheeler is only entitled to payment of its claim, not a deed to the restaurant property.

Instead of ordering payment in the form of the $50,000 in cashier's checks to Wheeler and denying Wheeler's motion to lift the stay, the bankruptcy court terminated the stay so that Wheeler could pursue a tax deed in state court. The bankruptcy court's April 18th Memorandum Decision disregarded the Plan's modification of Wheeler's claim, allowed Wheeler to potentially obtain a financial windfall on its Certificate of Purchase, and dismantled the Debtors' ability to formulate a viable reorganization plan. Furthermore, the bankruptcy court's decision lacks

consideration of how at the time Wheeler moved to lift the stay, Wheeler had done little to advance the state court litigation beyond filing a petition for a tax deed. This misapplication of controlling case law cannot stand. Therefore, the bankruptcy court's April 18th Memorandum Decision and corresponding orders are hereby vacated. Upon remand, the bankruptcy court should take steps not inconsistent with this Opinion; one direction may include the remedy proposed by Chase in the conclusion of its brief.

### III. CONCLUSION

The bankruptcy court's Memorandum Decision granting Wheeler relief from the automatic stay was an abuse of discretion because it was based on erroneous conclusions of law. Therefore, the Order Modifying the Automatic Stay must be vacated, and this case must be remanded for further proceedings consistent with this Opinion. Because reversible error occurred in the bankruptcy court's decision regarding the automatic stay, the Court also vacates the Order Denying Motion to Modify Plan without discussing the merits of the bankruptcy court's denial of the Debtors' motion to modify the stay.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: January 23, 2017